# Thomas H. Neilson's Appeal.

---

## Fannie N. Wells' Estate.

The following instrument: "For value received, I hereby sell and transfer to Fannie N. Wells all my stocks (railroad and mining), to be sold by her at her best judgment, and the proceeds to be applied as follows: First, to the payment of Shoemaker & Company's account and to relieve her bond; second, to redeem the $1,000 Pennsylvania Company bond and the two $500 St. Paul city bonds of Kate C. Neilson; and third, the rest to be applied to paying off my notes to the Fidelity and taking up the bonds of Mary A.

Neilson and her car company stock,"—*Held*, to vest in the party named therein the power to sell the stocks whenever in her judgment it is best so to do.

(Argued April 2, 1888.    Decided May 7, 1888.)

January Term, 1888, No. 309, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.   Appeal from a decree of the Orphans' Court of Philadelphia County, dismissing appellant's claim against the estate of Fannie N. Wells, deceased.   Affirmed.

The facts are stated in the following portions of the adjudication of the auditing judge:

"A claim was presented by Thomas H. Neilson for $3,990.06 damages arising from sale of certain shares of stock belonging to the claimant alleged to have been sold by the decedent without his authority.

"The facts with regard to this claim are as follows:

"The claimant had certain stock transactions with Cassatt, Townsend & Company, brokers, and in the latter part of 1883 was indebted to them in the sum of $1,856.38, to secure which they held as collateral 100 shares Green Bay, 200 shares of Richmond & Allegheny, 100 shares Cedar Falls and $1,000 Pennsylvania Canal 6's.   The bond last mentioned belonged to the decedent, by whom it had been loaned to the claimant.   The stocks were his own property.   The creditors being urgent for payment, Messrs. Shoemaker & Company, brokers, at the request of the claimant, took up the account and carried it for him, holding the same securities as collateral; and in the following May, they having in turn asked for settlement, the decedent, at the request and purely for the accommodation of the claimant, who was her brother, directed Messrs. Shoemaker & Company, who were satisfied with her individual responsibility, to charge the debt to her account, the collaterals being still held by them.   To secure her in this transaction the claimant executed a paper, of which the following is a copy:   [See headnote.]

"It is alleged that the decedent sold the stocks thus pledged without notice to the claimant, and at prices much lower than could subsequently have been obtained.   The claim is for the loss so arising.

"Under  the authority given by the claimant as above it was

not necessary that she should give notice of her intention to sell. The stocks were to be sold by her 'at her best judgment,' and with no right of interference on the part of the claimant.

"In point of fact, however, as the evidence showed, notice was given of the sale of the Richmond & Allegheny stock; and there seems little reason to doubt, although the fact did not affirmatively appear, that it was also given in the case of the other stocks. . . .

"The Green Bay stock appears to have been sold November 25, 1885, at $9, yielding $887.50. This price, it will be observed, is $1 above that mentioned in the letter last referred to as 'satisfactory' to the claimant.

"The claim is for loss arising from the sales thus made of Richmond & Allegheny stock and Green Bay stock; the former having sold at a later date, November 25, 1885, at 11½, and the latter April 7, 1886, at 17, the total difference being $3,-900.06, and making, with interest from April 7, 1886 ($90), the amount now claimed, $3,990.06.

"It may be observed, although it does not affect the decision of the case, that these stocks were of the class described by Mr. Shoemaker as 'wild cat,' that is, stock not bought for investment, but simply for purposes of speculation, and that the fluctuations in price were of the most extreme kind. Thus Richmond & Allegheny in May, 1884, the time when the decedent assumed the responsibility for the debt of the claimant, sold at 2⅛; in January, 1884, at 5; in May, 1885, at 1; in November, 1885, at 11¼; in May, 1886, at 2; in November, 1886, at 15¼; in June, 1887, at 2½, and in February, 1887, at 11¾. The Green Bay stock in November, 1885, sold at 9; in January, 1886, at 8; in December, at 14⅜; in January, 1887, at 12, and in April at 17.

"The decedent died, as already stated, May 4, 1886, a considerable time after the sale of the last of these stocks. She was a lady of means, and the relations between her brother and herself were intimate and friendly. Yet so far as the evidence discloses, there was at no time while she lived any demand made upon her, or any suggestion of the existence of a liability on her part to the claimant.

"In the opinion of the auditing judge, there is not and never was any such liability."

Claimant offered in evidence certain letters from decedent upon which he relied to show an intent on the part of decedent to relinquish her power to sell the stocks.

Exceptions to the adjudication of the auditing judge were dismissed by the court with the following opinion by ASHMAN, J.:

The agreement of May 17, 1884, was free from ambiguity, and rested upon a good consideration; the claimant, by its terms, having sold and delivered to the testatrix all his stocks, "to be sold by her at her best judgment," and having directed the proceeds to be applied in a specific way, and the testatrix having as an equivalent assumed the indebtedness of the claimant to Shoemaker. The subsequent correspondence and other acts of the parties do not show that the contract was either modified or superseded. In her letters to the claimant, the decedent advised him to sell some of the securities, and requested his judgment as to the sale of the others; but any inference from this that she waived her own right to sell or coupled it with an obligation to give notice of its exercise, was repelled by their narrative of her dealings with the broker, which latter were those of an absolute owner, or at least of one who had an absolute control of the stocks. The correspondence, however, not only negatives the supposition of a waiver, but expressly sets up the contrary. Thus, under a date of August 28, 1885, the decedent writes: "I earnestly desire to please you and myself, too, by getting 16 if possible, but do not think it wise to risk another fall below 14, by holding too long. I wish you were here to give me your consent, which, though not necessary under the business form, I prefer as a sister." So in her letter dated two days earlier, after directing the claimant to telegraph to the brokers to sell, she says: "If they do not hear from you to sell or not to sell, I will give the necessary order, in case they have not heard from you. Without my consent they would not have sold on your order."

The claimant is not competent to make the remaining objection that the agreement of May 27, 1884, was a trust, under which notice to the *cestuis que trust*, besides himself, of an intended sale, was imperative. He did not stipulate for that notice, and the other parties in interest do not complain of its absence. In all this we have assumed that no notice was given. But the auditing judge finds that notice of the sale of one stock

was proved, and that there was little reason to doubt that it was given in the case of all the stocks.

The exceptions are dismissed.

The assignments of error specified, *inter alia,* the action of the court in dismissing appellant's exceptions.

*William C. Mayne, Thomas H. Neilson,* and *F. Carroll Brewster,* for appellant.—Under the facts, the transaction was simply a bailment of stocks for the pre-existing indebtedness of Shoemaker & Company, and decedent stood in the same position as Shoemaker & Company, and could not have sold the stock, except upon reasonable notice to appellant of the time and place of sale. Jones, Pledges, §§ 610, 732; DeLisle v. Priestman, 1 1 Browne (Pa.) 176; Davis v. Funk, 39 Pa. 243, 80 Am. Dec. 519; Porter v. Patterson, 15 Pa. 229; Robertson v. Lippincott, 1 Phila. 308; Sitgreaves v. Farmers' & M. Bank, 49 Pa. 359; Conyngham's Appeal, 57 Pa. 474; Diller v. Brubaker, 52 Pa. 498, 91 Am. Dec. 177.

If, by any subsequent agreement between the parties, the stipulated time for payment has been rendered indefinite, it is not competent for the pledgee to sell until he has made a demand for payment. Pigot v. Cubley, 15 C. B. N. S. 701; Martin v. Reid, 11 C. B. N. S. 730.

It was decedent's duty to give appellant reasonable notice to redeem his stock pledged, so that he might have an opportunity of having the account transferred to himself, or some one for him; and the wrongful conversion of this stock, without this notice, renders her liable for the highest market value of the converted stock up to the time of trial, including all dividends, etc. Bank of Montgomery v. Reese, 26 Pa. 143; Reitenbaugh v. Ludwick, 31 Pa. 131; Persch v. Quiggle, 57 Pa. 247; Musgrave v. Beckendorff, 53 Pa. 310; Conyngham's Appeal, 57 Pa. 474.

*William Grew* and *Geo. W. Biddle* for appellees.

PER CURIAM:

The paper of May 17, 1884, did, without doubt, vest in Fannie N. Wells power to sell the stocks in controversy whenever, in her judgment, it was best so to do; and unless some clear

revocation of that power has been made to appear, the decree of the orphans' court must be allowed to stand. So far, however, as we can see,.no such revocation has been proved; and we agree with the learned judges of the said court that while her letters manifest a desire to consult the wishes of the appellant, they do not, in the slightest particular, indicate a disposition either to relinquish or change her power to sell.

The decree is affirmed and the appeal dismissed. at costs of appellant.